HAWTHORNE, Justice.
 

 Earl Clark was charged in a bill of indictment with the crime of aggravated rape denounced by R.S. 14:42. The accused is a Negro, the prosecutrix a white woman. Clark was tried, convicted, and sentenced to death. He has appealed.
 

 Counsel for the accused timely filed a motion to quash the indictment on the ground that it “fails to recite and state that the said defendant did ‘willfully, intentionally and
 
 *917
 
 feloniously’ commit the crime therein set out”.
 

 The indictment in the instant case was drawn in the language specifically permitted and authorized by Article 235 of the Code of Criminal Procedure for a charge of aggravated rape, and consequently the omission of the words “willfully, intentionally, and feloniously” is immaterial. Moreover, Article 234 of the Code of Criminal Procedure provides that no indictment shall be held insufficient for the omission, among other averments, of the word “intentionally” or the word “unlawfully”. As pointed out by the State in brief, “ * * * the word ‘willfully’ has the same connotation as the word ‘intentionally’, and the word ‘feloniously’ has the same connotation as the word ‘unlawfully’ * * * ”. There is no merit in this bill.
 

 The next bill of exception was taken to the overruling by the trial judge of a motion to quash, annul, and set aside the petit jury venire and tales jury venires from which the jury was drawn and selected, on the ground that there was systematic exclusion of Negroes.
 

 The defendant’s motion was argued and submitted to the court without any evidence being offered in support of its allegations. However, the minutes of the court reflect these pertinent facts:
 

 Of the list of 30 persons whose names were drawn from the general venire box by the jury commission pursuant to Article 181 of the Code of Criminal Procedure to serve as petit jurors for the session of court, 24 were present. On this petit jury venire list of 30 there were included three Negroes, one of whom apparently was absent, another was challenged peremptorily by the State, and the third claimed exemption from jury duty under Article 174 of the Code of Criminal Procedure because he was over 65 years old.
 
 [1]
 
 As the selection of the jury continued, the petit jury venire of 30 was exhausted, and the judge ordered that the tales jury box be brought into court and that 50 names be drawn from it, pursuant to Article 186 of the Code of Criminal Procedure. Of the 50 persons whose names were drawn from the tales jury box seven were Negroes. One of these Negroes was excused because of illness in his family, another was challenged and excused for cause, another was peremptorily challenged by the State, three claimed exemption because they were over 65 years old, and the seventh apparently was absent. As selection of the jury continued and it became apparent that the 50 names previously drawn from the tales jury box would soon be exhausted, the judge ordered the clerk to again produce the tales jury box in
 
 *919
 
 open court and draw from it the names of 50 additional tales jurors. Of these additional tales jurors eight were Negroes. The trial jury of 12 was completed, however, before the names of any of these eight Negroes were drawn and called for voir dire examination.
 

 After selection of the jury had been completed and each juror had taken the required oath, the court recessed for the day. When court reconvened the following morning, counsel for the defendant filed the motion with which we are here concerned. As stated previously, no evidence was introduced. The motion was argued both by counsel for the defense and by counsel for the State, and upon submission to the court was overruled.
 

 Although the State did not urge that the motion in the instant case was not timely filed under Article 202 of the Code of Criminal Procedure, the applicability of this article was discussed during the argument of this case.
 
 [2]
 
 We shall pretermit this procedural question and consider the motion on its merits.
 

 The law on the issues raised by defendant’s motion has been summarized by the Supreme Court of the United States in Brown v. Allen, 344 U.S. 443, 470, 73 S.Ct. 397, 414, 97 L.Ed. 469, thus:
 

 “Discriminations against a race by barring or limiting citizens of that race from participation in jury service are odious to our thought and our Constitution. This has long been accepted as the law. Brunson v. State of North Carolina, 333 U.S. 851, 68 S.Ct. 634, 92 L.Ed. 1132; Cassell v. State of Texas, 339 U.S. 282, 286-287, 70 S.Ct. 629, 631, 94 L.Ed. 839; State v. Peoples, 131 N.C. 784, 42 S.E. 814. Such discrimination is forbidden by statute, 18 U.S.C. § 243, 18 U.S.C.A. § 243, and has been treated as a denial of equal protection under the Fourteenth Amendment to an accused, of the race against which such discrimination is directed. Neal v. State of Delaware, 103 U.S. 370, 390, 26 L.Ed. 567. The discrimination forbidden is racial discrimination, however, directed to accomplish the result of eliminating or limiting the service of the proscribed race by statute or by practice. Smith v. State of Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84; Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76. It was explained in 1880 by this Court, when composed of justices familiar with the evils the Amendment sought to remedy, as permitting a state to ‘confine the selection [of jurors] to males, to freeholders, to citizens, to persons within certain ages or to persons having educational qualifications.’ Strauder v. State of West Virginia, 100 U.S.
 
 *921
 
 303, 310, 25 L.Ed. 664. Cf. Franklin v. State of South Carolina, 218 U.S. 161, 167-168, 30 S.Ct. 640, 642, 54 L.Ed. 980; Fay v. People of State of New York, 332 U.S. 261, 268-272, 67 S.Ct. 1613, 1617-1619, 91 L.Ed. 2043. While discriminations worked by consistent exclusion have been rigorously dealt with, Neal v. State of Delaware, 103 U.S. 370, 26 L.Ed. 567; Carter v. State of Texas, 177 U.S. 442, 20 S.Ct. 687, 44 L.Ed. 839; Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074; Pierre v. State of Louisiana, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757; Hill v. State of Texas, 316 U.S. 400, 62 S Ct. 1159, 86 L.Ed. 1559; Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76, variations in proportions of Negroes and whites on jury lists from racial proportions in the population have not been considered violative of the Constitution where they are explained and not long continued. Akins v. State of Texas, 325 U.S. 398, 403, 65 S.Ct. 1276, 1279, 89 L.Ed. 1692. Of course, token summoning of Negroes for jury service does not comply with equal protection, Smith v. State of Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84. Nor can a race be proscribed as incompetent for service, Hill v. State of Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559.”
 

 In Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 670, 98 L.Ed. 866, the United States Supreme Court said:
 

 “In numerous decisions, this Court has held that it is a denial of the equal protection of the laws to try a defendant of a particular race or color under an indictment issued by a grand jury, or before a petit jury, from which all persons of his race or color have, solely because of that race or color, been excluded by the State, whether acting through its legislature, its courts, or its executive or administrative officers.”
 

 In Eubanks v. Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991, it was stated:
 

 “In an unbroken line of cases stretching back almost 80 years this Court has held that a criminal defendant is denied the equal protection of the laws guaranteed by the Fourteenth Amendment if he is indicted by a grand jury or tried by a petit jury from which members of his race have been excluded because of their race.”
 

 The principal basis of defendant’s motion in the instant case is that in proportion to the number of Negroes in the Parish of Plaquemines only a small number was included in the venires from which the petit jury was selected;
 
 [3]
 
 that of this small number some were over 65 and could disqualify themselves from jury service; that the few remaining could be excluded from jury duty by the exercise of peremptory challenges by the district attorney; that as a
 
 *923
 
 result Negroes were systematically excluded from the trial jury.
 

 Systematic exclusion of Negroes from the jury was not established by a showing that there were only three Negroes included in the petit jury venire of 30 persons whose names were drawn from the general venire box, which under the law contained 300 names, and that only 15 Negroes were included in the 100 tales jurors, in spite of the fact that the 1960 census showed over 16,000 whites and over 6000 Negroes in Plaquemines Parish. As said by this court in State v. Coleman, 236 La. 629, 108 So.2d 534, “There must be evidence of either a planned exclusion or inclusion of a token number of Negroes or a state of facts showing a course of conduct which results in continued exclusion to justify the finding of a denial of equal protection. Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991; State v. Fletcher, 236 La. 40, 106 So.2d 709”.
 

 The fact that some of the Negroes whose names appeared on the jury venires were over 65 did not disqualify them for service. Exemption because of age is personal to all who are called for jury duty regardless of race, and is not a ground for challenge for cause (see Footnote 1, ante). In fact, the minutes of the court show that a number of white persons who were called for jury duty in this case were over 65, and that some of them claimed their personal right to be exempt from jury duty.
 

 The fact that the district attorney in the instant case peremptorily challenged some of the Negroes who were called for jury duty in the instant case does not of itself show systematic discrimination. Under Article 354 of the Code of Criminal Procedure the district attorney is given 12 peremptory challenges which he may exercise at his discretion. In the present case the district attorney peremptorily challenged white jurors as well as Negro jurors.
 

 In State v. Fletcher, 236 La. 40, 106 So.2d 709, cert. den. 359 U.S. 974, 79 S.Ct. 891, 3 L.Ed.2d 840, this court said:
 

 “ * * * It is, of course, settled that an accused claiming a denial of equal protection of the law because of systematic exclusion or inclusion of members of his race has the burden of proving the charges, it being presumed that public officials do their duty in accordance with law. State v. Perkins, supra [211 La. 993, 31 So.2d 188], and State v. Palmer, 232 La. 468, 94 So.2d 439.”
 

 As stated previously, the only evidence we have before us on defendant’s motion in this case is that shown by the minutes themselves, which of course deal with the selection of the jury only in this particular case. Counsel make no allegations of a systematic, planned exclusion of Negroes from, or inclusion of Negroes in, jury venires in Plaquemines Parish; their allegations are all concerned with the particular venires from which the trial -jury in this
 
 *925
 
 case was selected. Under the law announced by the Supreme Court of the United States as set out above, it is our view that the record in this case does not show that there has been a systematic exclusion of Negroes from jury duty so as to deny to the accused the equal protection of the laws. The trial judge therefore properly overruled defendant’s motion.
 

 The conviction and sentence are affirmed
 

 [1]
 

 . Under this article persons over 65 are exempt from serving on grand or petit juries, but this exemption is personal to them and they themselves must claim it. Their age does not disqualify them and is not ground for challenge for cause.
 

 [2]
 

 . See State v. Michel, 225 La. 1040, 74 So.2d 207, aff’d 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83; State v. Labat, 226 La. 201, 75 So.2d 333, aff’d 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83: State v. Chianelli, 226 La. 552. 76 So.2d 727.
 

 [3]
 

 . The motion recites that according to the 1 0 census there were 16,052 whites and 6493 Negroes in Plaquemines Parish.